## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| CITY OF MIAMI FIRE FIGHTERS' AND POLICE OFFICERS' RETIREMENT TRUST, Individually and On Behalf of All Others Similarly Situated,<br><br>                             Plaintiff,<br><br>        v.<br><br>MGP INGREDIENTS, INC., AUGUSTUS C. GRIFFIN, THOMAS K. PIGOTT, and BRANDON M. GALL,<br><br>                             Defendants. | **Case No.**<br><br>**COMPLAINT – CLASS ACTION**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of (i) regulatory filings made by MGP Ingredients, Inc. ("MGP" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases and media reports issued and disseminated by the Company; (iii) analyst reports concerning the Company and its subsidiaries; (iv) transcripts of MGP's investor conference calls; and (v) other public information regarding the Company.

## <u>NATURE OF THE ACTION</u>

1. Plaintiff brings this securities class action (the "Action") against MGP and certain of the Company's former and current senior executives under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5, promulgated

thereunder, on behalf of all investors who purchased or otherwise acquired MGP common stock between August 2, 2018 and February 25, 2020, inclusive (the "Class Period").

2.      Based in Atchison, Kansas, MGP is a producer and supplier of distilled spirits and food ingredient products.  The majority of its business is the production of distilled spirits including aged-whiskey, un-aged rye whiskey, distilled gin, bourbon, and industrial alcohol.  In 2015, MGP announced that, as a part of the Company's five-year strategy for future growth, MGP would embark on a four-year process to produce and sell aged whiskey, and, accordingly, created an inventory of whiskey that would be ready for sale four years later in 2019.

3.      After accumulating approximately $70 million of aged-whiskey inventory, throughout the Class Period, Defendants repeatedly assured investors that the Company had a clear "line-of-sight" into the demand for its inventory, and that demand was strong.  MGP assured investors that, thanks to its "far superior sales force," and its clear "visibility" into its customers' demands, MGP would have no trouble selling its entire inventory of aged whiskey for at least three times its cost.  By the beginning of 2019, MGP claimed that the Company had already begun securing orders for its whiskey amidst this strong demand.  In reality, however, MGP was struggling to find customers to buy its aged whiskey, and at no point had any meaningful visibility into the demand for this product.

4.      The truth began to emerge through a series of disclosures beginning on May 1, 2019, when MGP reported declining sales of aged whiskey.  Over the course of the next three quarters, MGP continued to report disappointing financial results and poor aged-whiskey sales, but assured investors that it was still experiencing strong demand for its whiskey.

5.      On January 17, 2020, however, the Company drastically reduced its 2019 sales and earnings guidance by approximately $24 million and $9 million, respectively, and reduced its 2019

earnings per share ("EPS") guidance from $2.60 to $2.25 at the midpoint.  Significantly, MGP's Chief Executive Officer ("CEO"), Augustus Griffin, admitted that MGP did not in fact have as strong of a "line of sight we believed we had to these aged sales" and that MGP is "currently conducting additional analysis to better understand the aged whiskey market."

6.     That same day, an analyst with SunTrust Robinson ("SunTrust") concluded that, contrary to the Company's representations, MGP ***"doesn't seem to have sold any of its fully aged inventory in 2019."***[1]

7.     Approximately three weeks later, on February 11, 2020, CEO Griffin unexpectedly "stepped down" from his position.

8.     Finally, on February 26, 2020, MGP announced its fiscal year 2019 financial results, and disclosed to investors that the Company had experienced "disappoint[ing]" results as MGP was "unsuccessful in transacting a large portion of the aged whiskey sales" that MGP had forecasted it would sell.

9.     All told, news of MGP's disclosures caused significant declines in the price of MGP shares, causing MGP investors to suffer millions of dollars in losses and economic damages under the federal securities laws.

10.     As a result of Defendants' wrongful acts and omissions, which caused the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant damages.

---

[1] All emphasis added and internal citations omitted unless otherwise noted.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  MGP is incorporated and headquartered in this District, Defendants conduct business in this District, and the majority of the Defendants' actions and misconduct occurred within this District.

14.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

15.     Plaintiff City of Miami Fire Fighters' and Police Officers' Retirement Trust was founded in 1939, and provides retirement and disability benefits to over 2,000 Miami-based firefighters and police officers.  As of September 30, 2018, Plaintiff manages more than $1.7 billion in assets.  As set forth in the attached certification, Plaintiff acquired MGP common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant MGP is a producer and supplier of distilled spirits and food ingredient products.  MGP is incorporated in Kansas with its principal executive offices located at 100

Commercial Street, Atchison, Kansas, 66002.  MGP common stock trades in an efficient market on the NASDAQ under the ticker symbol "MGPI."

17.    Defendant Augustus C. Griffin ("Griffin") was the CEO and President of MGP, and was a Director on MGP's Board of Directors at all relevant times.

18.    Defendant Thomas K. Pigott ("Pigott") served as MGP's Chief Financial Officer ("CFO") and Vice President of Finance from the start of the Class Period until March 2019.

19.    Defendant Brandon M. Gall ("Gall") has served as MGP's CFO, Controller, and Vice President of Finance from April 1, 2019 until present.

20.    Defendants Griffin, Pigott, and Gall are sometimes referred to hereinafter as the "Individual Defendants."

21.    The Individual Defendants possessed the power and authority to control the contents of MGP's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of MGP's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with MGP, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     MGP is a producer and supplier of premium distilled spirits and specialty wheat protein and starch food ingredients.  Distilled spirits include aged-whiskey, premium bourbon and rye whiskeys, and grain neutral spirits such as vodka and gin.  MGP is also a producer of high-quality industrial alcohol for use in both food and non-food applications.

23.     On February 5, 2015, MGP announced in a press release a new five-year plan, highlighting five "key strategies" the Company would pursue.  In a press release issued on March 12, 2015, MGP explained that, among these strategies, MGP would "invest[] to support growth" by "largely focus[ing] on . . . the rapidly growing whiskey category, including the working capital needed to increase our stock of aged whiskey inventory."  Thus, instead of selling the Company's whiskey as an unaged new distillate, which was then barreled and aged by MGP's customers, MGP began storing significant amounts of barreled distillate that it could later sell as aged whiskey.

24.     After approximately four years of aging, the Company expected to commence selling its aged whiskey in the beginning of 2019.  As 2019 approached, the value of MGP's inventory of aged whiskey exceeded $70 million.

### Materially False and Misleading Statements Issued During the Class Period

25.     The Class Period begins on August 2, 2018 when MGP issued a press release, which it also filed on Form 8-K with the SEC, announcing its financial results for the second quarter of 2018.  In the press release, the Company stated that its "investment in aged whiskey inventory continues to grow, and has now reached $73.0 million, at cost.  A portion of the sizable increase in our inventory from last quarter reflects stronger anticipated sales of our premium American Whiskey products in the second half of the year."

6

26.     In addition, MGP stated in the second quarter 2018 press release that "The Company's conservative estimate of growth in operating income in 2019 is 15% to 20% as sales of aged whiskey inventory become a more significant factor."

27.     That same day, during the Company's second quarter 2018 earnings conference call hosted by MGP CEO Griffin and then-CFO Pigott, Griffin stated that the Company "continue[s] to have positive discussions with existing and prospective customers about the potential for this product."

28.     On November 1, 2018, MGP issued a press release, which it also filed on Form 8-K with the SEC, announcing its financial results for the third quarter of 2018.  In the press release, the Company reiterated that its "conservative estimate of growth in operating income in 2019 is 15% to 20% as sales of aged whiskey inventory become a more significant factor."

29.     That same day, during the Company's third quarter 2018 earnings conference call hosted by Griffin and Pigott, Griffin was asked by an analyst if there was "any change" to MGP's outlook on the value of its aged whiskey inventory, to which Griffin replied "we're feeling increasingly confident in both the demand for that inventory and the pricing for that inventory" and that MGP has not "seen anything that would change our view of the value of that inventory."

30.     On December 13, 2018, MGP hosted analysts from SunTrust and MGP investors at a conference where MGP discussed the planned use of its aged whiskey inventory and sales trends the Company had been observing.  At this conference, SunTrust reported that MGP management was "adamant that it could sell the entire inventory at the 3x multiple tomorrow if needed," and that MGP assured investors that the Company had a "good line of sight [in]to the unallocated inventory that is not already spoken for."  SunTrust also reported MGP as stating that "[i]ndustry

demand has outpaced supply for several years and the company has no knowledge of any other independent distiller that was putting away excess inventory four years ago."

31.     On February 27, 2019, MGP issued a press release, which it also filed on Form 8-K with the SEC, announcing its 2018 fourth quarter and fiscal year financial results.  In this press release, MGP stated that the Company "continue[s] to benefit from favorable consumer trends, and [its] strategic plan has [MGP] well positioned to fully capture the potential these trends offer. . . . We are confident that our strategy and investments have us well positioned, and will provide us the resources we need, to deliver strong growth in 2019 and beyond."

32.     Also on February 27, 2019, during MGP's fourth quarter and fiscal year 2018 earnings call, CEO Griffin stated that the Company "continue[s] to see strong demand for aged whiskey as customers seek to fill inventory gaps driven by higher-than-expected consumer demand."  Griffin continued to state that MGP will "continue to work with [its] current and prospective customers and [is] pleased with [its] progress" in selling its aged-whiskey inventory. MGP also maintained that the Company's projected operating income growth in 2019 would be "15% to 20%" of its 2018 financial results.

33.     In addition, Griffin explained that, "[a]s a result of *sales already transacted* and ongoing discussions with customers in the craft segment, multinational and national brand owners as well as the export market, we are confident that we have visibility to the aged sales we need to deliver against this year's guidance."  Griffin continued to represent that "sales of aged whiskey will be a key driver of our growth in [2019]. *We have started contracting that.  We have started transacting it*."

34.     Finally, Griffin reiterated that:

[W]e feel very confident that we have visibility to the aged sales we need to deliver the guidance this year, and it will continue to be a driver of our growth going

8

forward in future years. We are going to increase our inventory, so we're going to continue to put away whiskey at a strong pace to make sure that we have the incremental inventory in future years to continue to drive that growth from sales – incremental sales of aged whiskey.

35.     The statements referenced in ¶¶ 25-34 were materially false and misleading, and they failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not false and misleading.  In truth, MGP was not experiencing "strong demand" for its aged whiskey and had no reasonable basis to represent to investors that the Company had a good "line of sight" into the demand for its aged whiskey.  In addition, MGP had failed to complete any significant sales of its aged-whiskey inventory, let alone sell its aged-whiskey at the significant premium the Company represented to investors.  As a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

36.     On May 1, 2019, MGP issued a press release, which it also filed on Form 8-K with the SEC, that reported poor financial results for the first quarter of 2019.  Specifically, MGP announced that its consolidated operating income has ***decreased*** by over 18%, and the Company's consolidated gross profit decreased by over 12%.  MGP attributed these disappointing financial results, in part, to its "lower volumes" in sales of aged whiskey.

37.     These disclosures caused MGP's stock price to decline by approximately 23% on exceptionally high trading volume, falling from $87.87 per share on April 30, 2019 to $67.79 per share on May 1, 2019.

38.     Despite these disclosures, MGP reiterated that it was on track to meet its 2019 guidance and reassured investors that its aged whiskey-related problems were due to short-term factors and that demand remained strong.  In particular, in the May 1, 2019 press release and Form 8-K, CEO Griffin stated that "we do not believe [MGP's financial results] are the result of any

changes to underlying consumer trends or our position in the market. . . . We have reviewed our outlook for the remainder of the year and are confidently confirming our previous guidance." Griffin also claimed that "[a]ged [whiskey] sales reflect lower volumes but higher pricing as we transition from selling lighter aged whiskey inventory to older whiskey inventory.  We expect both parts of our brown goods business to return to growth over the remainder of the year as a result of stronger demand and continued strong pricing."

39.     In addition, during the Company's May 1, 2019 first quarter 2019 earnings conference call, Griffin reiterated that MGP "continue[s] to see strong demand and pricing for [its] products and [is] confident in [its] ability to deliver against [its] annual guidance."  Griffin further stated that:

> [W]e do not believe [MGP's first quarter 2019 financial results] are the result of any changes in underlying consumer trends or our position in the market.  As a result and after a detailed review of our outlook for the remainder of the year, we are confidently confirming our previous annual guidance.

40.     The statements quoted above in ¶¶ 36-39 were materially false and misleading because MGP had no reasonable basis to claim that the Company had any meaningful insight into the demand for its aged-whiskey and/or Defendants failed to disclose facts known to them that the demand for its aged-whiskey was substantially less than what Defendants represented to investors.

41.     In an analyst report issued on June 28, 2019, SunTrust reported meeting with Griffin and CFO Gall and "[coming] away from the meetings encouraged that 1) the issues that tripped up 1Q have not carried over into 2Q" and that MGP "still should easily exceed the current guidance."  SunTrust further reported that, according to the Company, "MGP[] has not seen any cutbacks in orders from existing customers like it saw in 2Q18."

42.     On July 31, 2019, however, MGP issued a press release, which it also filed on Form 8-K with the SEC, announcing the Company's quarterly financial results for the second quarter of

2019, which again missed expectations.  The Company reported it would be revising its full-year guidance downward, lowering the bottom end of its operating income growth range to 10% from 15%.  MGP attributed these results to poor sales of its aged whiskey, stating that "sales of aged whiskey have lagged our expectations."

43.     As a result of those disclosures, MGP's stock price declined by approximately 26%, falling from $67.14 per share on July 30, 2019, to $49.99 per share on July 31, 2019, on exceptionally high trading volume of almost 3 million shares traded.

44.     Following these disclosures, MGP continued to mislead investors by attributing its poor financial performance to cancellations of several orders for high-margin aged whiskey in the last few weeks of the quarter, and assured investors that the cancellations did not represent any broad decrease in demand for aged whiskey.  Rather, MGP told investors that demand and pricing for aged whiskey continued to be strong.  For example, in the July 31, 2019, press release and Form 8-K, Griffin stated that "[w]e remain confident in both the long-term demand for, and the value of this inventory, and expect to see a significant increase in sales of aged whiskey over the remainder of the year."  Griffin reiterated that MGP "expect[s] to report an improved performance over the back half of the year and [is] off to a strong start in the third quarter."

45.     That same day, in the Company's second quarter 2019 earnings conference call hosted by Griffin and CFO Gall, Griffin stated that "[d]espite the slow start to the year for sales of aged whiskey, we remain confident in both the long-term demand for and the value of this inventory and expect to see a significant increase in sales of aged whiskey over the remainder of the year."  On this call, Griffin also stated:

> We are off to a good start to the back half of the year, having already recorded actual sales or received purchase orders for about 12% of our projected sales of aged whiskey for the remainder of the year. Additionally, we are in active, ongoing discussions with specific customers for another approximately 60% of those

11

projected sales. This visibility, coupled with the continued solid trends of the category, gives us confidence for strong aged sales growth in the back half of the year.

46.     The statements quoted above in ¶¶ 41-45 were materially false and misleading because MGP had no reasonable basis to claim that the Company had any meaningful insight into the demand for its aged-whiskey and/or Defendants failed to disclose facts known to them that the demand for its aged-whiskey was substantially less than what Defendants represented to investors.

47.     On October 31, 2019, MGP issued a press release, which it also filed on Form 8-K with the SEC, announcing that its financial results for the third quarter of 2019 were again below expectations.  Specifically, MGP announced that its consolidated operating income had ***decreased*** by 3.4%, and its consolidated sales and gross profit had decreased by 4.6% and 4.1% respectively.

48.     These disclosures caused MGP's stock price to decline by approximately 12%, from $48.49 per share on October 30, 2019 to $42.89 per share on October 31, 2019.

49.     In the same third quarter 2019 press release and Form 8-K, however, MGP reassured investors, like the Company did in the second quarter of 2019, that the Company was "off to a strong start to the fourth quarter," and that MGP is "confident in [its] line of sight to the sales required to deliver against [its] full year guidance."

50.     During the third quarter 2019 earnings conference call, hosted by Griffin and Gall and held on October 31, 2019, Griffin further reassured investors that MGP is "now seeing the type of demand we anticipated when we initiated this investment."

51.     The statements quoted above in ¶¶ 47-50 were materially false and misleading because MGP had no reasonable basis to claim that the Company had any meaningful insight into the demand for its aged-whiskey and/or Defendants failed to disclose facts known to them that the demand for its aged-whiskey was substantially less than what Defendants represented to investors.

52.     Then, in a press release issued on January 17, 2020, which MGP also filed on Form 8-K with the SEC, MGP stunned investors when it announced that sales for 2019 were predicted to be $362 million—well short of the previously forecasted of $391 million.  Instead of the nearly $2.60 in EPS previously expected for the year, MGP stated that it now expected to report EPS between $2.20 and $2.30 for the year.  Griffin explained that "this shortfall is disappointing, particularly given the line of sight we believed we had to these aged sales" and that MGP is "currently conducting additional analysis to better understand the aged whiskey market, and, going forward, [] will continue to refine [its] strategies and tactics to improve the sales predictability and management of this important piece of [its] business."

53.     This news caused analysts to react sharply.  For example, an analyst from SunTrust called MGP's estimates "significantly worse than expected," and cut his rating on the stock to "hold" from "buy," slashing the price target to $55 from $80.  Moreover, this analyst concluded that, contrary to the Company's representations, MGP "***doesn't seem to have sold any of its fully aged inventory in 2019.***"

54.     As a result of these disclosures, the price of MGP stock declined by approximately 28%, from $52.78 per share on January 16, 2020 to $38.18 per share on January 17, 2020, on extremely high trading volume of approximately 2.4 million shares.

55.     Then, on February 11, 2020, MGP announced via a press release, which it also filed on Form 8-K with the SEC, that CEO Griffin would be resigning, effective May 21, 2020.

56.     Two weeks later, on February 26, 2020, MGP announced its 2019 fourth quarter and fiscal year financial results, and disclosed to investors that the Company had experienced "disappoint[ing]" results yet again as MGP was "unsuccessful in transacting a large portion of the

aged whiskey sales" that MGP had forecasted it would sell.  In addition, the Company reduced its sales guidance going forward.

57.     These disclosures caused MGP's stock price to decline by approximately 11%, from $31.80 per share on February 25, 2020, to $28.42 per share on February 26, 2020.

58.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## LOSS CAUSATION

59.     During the Class Period, Defendants made materially false and misleading statements and omissions, including statements regarding the Company's aged-whiskey inventory, and engaged in a scheme to deceive the market.  This conduct artificially inflated the price of MGP common stock and operated as a fraud or deceit on the Class.   When Defendants' misrepresentations and risks concealed by the fraudulent conduct alleged in this complaint subsequently materialized and were disclosed to the market, the price of MGP common stock fell precipitously.  As a result of their acquisition of MGP common stock during the Class Period, Plaintiff and other members of the Class (defined below) suffered economic loss, *i.e.*, damages, under the federal securities laws, which were caused by Defendants' material misstatements and omissions.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired MGP common stock during the Class Period (the "Class"), and were damaged by the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein,

the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

61.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, MGP common stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by MGP or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

62.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of February 21, 2020, MGP had over 17 million shares of common stock outstanding, owned by at least hundreds or thousands of investors.

63.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class, which predominate over questions which may affect individual Class members, include:

      (a)     Whether Defendants violated the Exchange Act;

      (b)     Whether Defendants omitted and/or misrepresented material facts;

      (c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(e)     Whether Defendants' misconduct impacted the price of MGP common stock;

(f)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(g)     The extent of damages sustained by Class members and the appropriate measure of damages.

64.     Plaintiff suffered damages as a result of the violations of the federal securities laws alleged herein that will ensure Plaintiff's vigorous prosecution of the Class's claims.

65.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

66.     Plaintiff will adequately protect the Class's interests and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

67.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

68.     The statutory safe harbor provided under certain circumstances for forward-looking statements does not apply to any of the false statements described in this complaint.  Many of the specific statements described in this complaint were not identified as "forward-looking" when made.  To the extent that there were any forward-looking statements, there was no meaningful cautionary language identifying important factors that could cause actual results to differ

16

materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements described in this complaint, Defendants are liable for those false forward-looking statements because at the time each was made, the particular speaker knew that the particular forward-looking statement was false or misleading, or the forward-looking statement was authorized or approved by an executive officer of MGP who knew that the statement was false or misleading when made.

### PRESUMPTION OF RELIANCE

69.     At all relevant times, the market for MGP's common stock was an efficient market for the following reasons, among others:

(a)     MGP common stock met the requirements for listing and was listed and actively traded on the NASDAQ stock market, a highly efficient and automated market;

(b)     MGP filed periodic public reports with the SEC and NASDAQ;

(c)     MGP regularly and publicly communicated with investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     MGP was followed by securities analysts employed by numerous major brokerage firms, who wrote reports that were distributed to the sales forces and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

70.     As a result of the foregoing, the market for MGP common stock promptly digested current information regarding MGP from all publicly available sources and reflected that information in the price of MGP common stock.  Under these circumstances, all purchasers of MGP common stock during the Class Period suffered similar injuries through their purchase of MGP common stock at artificially inflated prices, and the presumption of reliance applies.

71.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding MGP's business operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of MGP's aged-whiskey inventory, as alleged above, that requirement is satisfied here.

## CAUSES OF ACTION

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

72.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

73.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

74.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of MGP common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire MGP common stock and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

75.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for MGP common stock.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about MGP's finances and business prospects.

76.     By virtue of their positions at MGP, the Individual Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Individual Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and

omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

77.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of MGP, the Individual Defendants had knowledge of the details of MGP's internal affairs.

78.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of MGP.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to MGP's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of MGP common stock was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning MGP's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired MGP common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

79.    During the Class Period, MGP common stock traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or

relying upon the integrity of the market, purchased or otherwise acquired shares of MGP common stock at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of MGP common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of MGP common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

80.     By reason of the conduct alleged herein, Defendants have knowingly or recklessly, directly or indirectly, violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

81.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

82.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83.     During the Class Period, the Individual Defendants participated in the operation and management of MGP, and conducted and participated, directly and indirectly, in the conduct

of MGP's business affairs.  Because of their senior positions, they knew the adverse non-public information about MGP's misstatement of income and expenses and false financial statements.

84.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to MGP's financial condition and results of operations, and to correct promptly any public statements issued by MGP which had become materially false or misleading.

85.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which MGP disseminated in the marketplace during the Class Period concerning MGP's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause MGP to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of MGP within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of MGP common stock.

86.     Each of the Individual Defendants, therefore, acted as a controlling person of MGP.  By reason of their senior management positions and/or being directors of MGP, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, MGP to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of MGP and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

87.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by MGP.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and other Class members against MGP and the Individual Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D.    Awarding any equitable, injunctive, or other further relief that the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

## DESIGNATION OF PLACE OF TRIAL

Pursuant to Local Rule 40.2(a), Plaintiff designates Kansas City, Kansas as the place of trial.

Dated: April 6, 2020                              Respectfully submitted,

                                                  **FLEESON, GOOING, COULSON**
                                                  **& KITCH L.L.C.**

                                                  */s/ Ryan K. Meyer*
                                                  Ryan K. Meyer, KS State Reg. #24340
                                                  David G. Seely, KS State Reg. #11397
                                                  Fleeson, Gooing, Coulson & Kitch L.L.C.
                                                  1900 Epic Center, 301 N. Main
                                                  Wichita, Kansas 67202
                                                  Tel: (316) 267-7361
                                                  Fax: (316) 267-1754
                                                  rmeyer@fleeson.com

dseely@fleeson.com

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

Hannah Ross
Avi Josefson
Scott Foglietta
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiff City of Miami Fire*
*Fighters' and Police Officers' Retirement Trust*

**KLAUSNER KAUFMAN JENSEN**
**& LEVINSON**
Robert D. Klausner
Stuart A. Kaufman
780 NW 4th Street
Plantation, Florida 33317
Tel: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for Plaintiff City of Miami*
*Fire Fighters' and Police Officers' Retirement*
*Trust*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Dania L. Orta, on behalf of the City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Miami FIPO"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Administrator of Miami FIPO. I have reviewed the complaint with the Fund's legal counsel. Based on the legal counsel's knowledge and advice, Miami FIPO has authorized the filing of the complaint.

2. Miami FIPO did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Miami FIPO is willing to serve as a lead plaintiff and representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary. Miami FIPO fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class.

4. Miami FIPO's transactions in the MGP Ingredients, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Miami FIPO has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

   *Janak Anarkat v. CVS Health Corp.,* No. 19-cv-1725 (S.D.N.Y.)

6. Miami FIPO has sought to serve as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motions for lead plaintiff or was not appointed lead plaintiff:

   *Danker v. Papa John's International, Inc.,* No. 18-cv-7927 (S.D.N.Y.)
   *Bristol County Retirement System v. Qurate Retail, Inc.,* No. 18-cv-2300 (D. Col.)
   *In re Cloudera, Inc. Securities Litigation,* No. 19-cv-03221 (N.D. Cal.)

7. Miami FIPO has served as a representative party on behalf of a class in the following action filed under the federal securities laws during the three years preceding the date of this Certification:

   *Scheller v. Nutanix, Inc.,* No. 19-cv-01651 (N.D. Cal.)

8. Miami FIPO will not accept any payment for serving as a representative party on behalf of the Class beyond Miami FIPO's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of March, 2020.

Dania L. Orta
Administrator
*City of Miami Fire Fighters' and Police Officers'*
*Retirement Trust*

**City of Miami Fire Fighters' and Police Officers' Retirement Trust**
**Transactions in MGP Ingredients, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 8/28/2018 | 580 | 72.1142 |
| Purchase | 8/29/2018 | 785 | 72.8027 |
| Purchase | 9/4/2018 | 100 | 77.6000 |
| Purchase | 9/17/2018 | 300 | 78.2260 |
| Purchase | 9/18/2018 | 50 | 78.5163 |
| Purchase | 9/18/2018 | 75 | 77.7350 |
| Purchase | 9/19/2018 | 155 | 78.1713 |
| Purchase | 9/20/2018 | 135 | 77.4698 |
| Purchase | 9/21/2018 | 335 | 78.9980 |
| Purchase | 9/24/2018 | 55 | 77.7261 |
| Purchase | 9/24/2018 | 335 | 77.7538 |
| Purchase | 9/24/2018 | 90 | 78.8400 |
| Purchase | 9/25/2018 | 160 | 77.5128 |
| Purchase | 9/25/2018 | 110 | 77.5300 |
| Purchase | 9/26/2018 | 200 | 78.2172 |
| Purchase | 9/27/2018 | 240 | 78.6830 |
| Purchase | 9/28/2018 | 265 | 78.8666 |
| Purchase | 10/1/2018 | 425 | 76.8124 |
| Purchase | 10/1/2018 | 460 | 77.4013 |
| Purchase | 10/2/2018 | 250 | 75.0408 |
| Purchase | 10/3/2018 | 165 | 75.7001 |
| Purchase | 10/3/2018 | 110 | 75.3100 |
| Purchase | 10/4/2018 | 180 | 74.7685 |
| Purchase | 10/4/2018 | 200 | 74.7432 |
| Purchase | 10/5/2018 | 210 | 74.5411 |
| Purchase | 10/5/2018 | 70 | 74.5109 |
| Purchase | 10/8/2018 | 170 | 75.4943 |
| Purchase | 10/10/2018 | 260 | 76.7813 |
| Purchase | 10/11/2018 | 170 | 74.9627 |
| Purchase | 10/11/2018 | 60 | 75.6600 |
| Purchase | 10/16/2018 | 80 | 74.4150 |
| Purchase | 10/17/2018 | 165 | 75.4476 |
| Purchase | 10/17/2018 | 105 | 75.3100 |
| Purchase | 10/18/2018 | 245 | 74.5634 |
| Purchase | 10/19/2018 | 110 | 75.2343 |
| Purchase | 10/22/2018 | 135 | 75.5100 |
| Purchase | 10/23/2018 | 190 | 72.7950 |
| Purchase | 10/23/2018 | 270 | 72.4216 |

**City of Miami Fire Fighters' and Police Officers' Retirement Trust Transactions in MGP Ingredients, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 10/24/2018 | 400 | 70.2954 |
| Purchase | 11/13/2018 | 185 | 69.0135 |
| Purchase | 11/14/2018 | 440 | 69.9462 |
| Purchase | 11/15/2018 | 200 | 67.7871 |
| Purchase | 11/16/2018 | 75 | 71.2457 |
| Purchase | 12/7/2018 | 300 | 61.3852 |
| Purchase | 12/13/2018 | 165 | 56.2131 |
| Purchase | 12/14/2018 | 235 | 54.9621 |
| Purchase | 12/20/2018 | 600 | 56.0840 |
| Purchase | 1/11/2019 | 150 | 66.0000 |
| Purchase | 1/14/2019 | 370 | 62.6538 |
| Purchase | 1/14/2019 | 75 | 63.1500 |
| Purchase | 1/15/2019 | 155 | 63.0157 |
| Purchase | 1/17/2019 | 65 | 66.0000 |
| Purchase | 1/18/2019 | 250 | 67.0165 |
| Purchase | 1/31/2019 | 135 | 71.9921 |
| Purchase | 3/19/2019 | 85 | 73.6490 |
| Purchase | 3/20/2019 | 290 | 75.9434 |
| Purchase | 3/21/2019 | 225 | 78.0140 |
| Purchase | 3/22/2019 | 200 | 77.3188 |
| Purchase | 5/21/2019 | 50 | 64.1480 |
| Purchase | 5/22/2019 | 85 | 64.6979 |
| Purchase | 5/23/2019 | 290 | 63.5729 |
| Purchase | 5/24/2019 | 255 | 64.1533 |
| Purchase | 5/28/2019 | 665 | 63.0248 |
| Purchase | 5/28/2019 | 265 | 64.1144 |
| Purchase | 5/29/2019 | 90 | 61.6037 |
| Purchase | 5/29/2019 | 100 | 62.0300 |
| Purchase | 6/25/2019 | 230 | 61.2567 |
| Purchase | 6/25/2019 | 235 | 61.1923 |
| Purchase | 6/26/2019 | 355 | 60.4800 |
| Purchase | 7/17/2019 | 150 | 66.4656 |
| Purchase | 7/22/2019 | 230 | 67.3473 |
| Purchase | 8/27/2019 | 135 | 45.3395 |
| Purchase | 8/28/2019 | 55 | 46.5398 |
| Purchase | 8/29/2019 | 400 | 48.0746 |
| Purchase | 8/30/2019 | 65 | 48.0639 |
| Purchase | 9/3/2019 | 265 | 48.0212 |

**City of Miami Fire Fighters' and Police Officers' Retirement Trust Transactions in MGP Ingredients, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 9/4/2019 | 165 | 50.0230 |
| Purchase | 9/5/2019 | 115 | 51.6126 |